Southern Brass & Iron Co. v. Exeter Mach. Works.

---

\*SOUTHERN BRASS & IRON CO., *v.* EXETER MACH.
WORKS *et al.*

(*Knoxville.*   September Term, 1902.)

1. **SALES OF PERSONALTY**—Implied warranty—Action for
   breach of.

   A sale by a manufacturer of an engine and attachments of a
   certain capacity and quality and for a special use and pur-
   pose communicated to the seller at the time carries with the
   sale an implied warranty that said machinery is reasonably
   suitable and fit for the use and purpose intended; and this
   rule applies whether the machinery was in stock or specially
   manufactured to fill the particular order.   (*Post, p.* 72.)

   Cited and approved:   Overton *v.* Phelan, 3 Head, 446; Tennes-
   see River Company *v.* Leeds, 97 Tenn., 574.

2. **SAME.** Same. Same. Not waived by failure to return
   goods.

   The right of action of the buyer for breach of an implied war-
   ranty of the quality of the goods is not waived or abandoned
   by acceptance, use, payment for, failure to return, or offer
   to return the goods, or, in this case, the machinery. It is
   well settled that the purchaser of goods with warranty as
   to quality, either express or *implied*, may maintain an action
   and recover for breach of such warranty without a return, or
   offer to return, of the goods, and after payment.   (*Post,*
   *pp.* 72-73. 76.)

   Cited and approved:   Harkleroud *v.* Nave, 2 Tenn. Cases, 407;
   Lewis and Jackson *v.* Hubbard, 1 Lea, 439; Ford *v.* Thomp-
   son, 1 Head, 266; Lawrence *v.* Vich., 10 Humph., 285; Over-
   ton *v.* Phelan, 2 Head, 446.

---

\*As to implied warranty of fitness of property bought for
special purpose, see note to McQuaid *v.* Ross (Wis.) 22 L. R. A.,
187.

**3. SAME. Return of goods necessary or material when.**

It is only necessary to return, or offer to return, the goods, when the purchaser elects to rescind the contract and resists payment; or, when payment has been made, seeks to recover the entire consideration, which is the measure of damages in rescission. (*Post, pp.* 73-74.)

**4. SAME. Same.**

If purchaser elects to rescind, the goods must be returned or tendered to the vendor within a reasonable time, unless return or tender is excused by refusal of vendor to accept them. (*Post, p.* 74.)

**5. SAME. Same. Reason of rule.**

The return or tender is required of the purchaser because he can not be allowed both to retain the goods and refuse payment of all the purchase price. (*Post, p.* 74.)

**6. SAME. Same. Measure of damages.**

Where the vendee elects to treat the contract as closed and absolute and sues for a breach of the warranty, the general rule is that the measure of damages is the difference between the value of the property contracted for and that delivered; and, therefore, he need not return or tender back the goods, but has the right to retain them. (*Post, p.* 74.)

Cited and approved: Allen *v.* Anderson, 2 Hump., 581-3.

Cases reviewed and distinguished: Rosson *v.* Hancock, 3 Sneed, 434; Kentucky Saw Works *v.* Little River Land and Lumber Co., 42 S. W. Rep., 527.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. JOSEPH W. SNEED, Chancellor.

PICKLE & TURNER, for Southern Brass & Iron Company.

GREEN & SHIELDS, for Exeter Machinery Works.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This suit is brought to recover damages for breach of implied warranty of the quality and capacity of a hoisting engine and attachments bought by the complainant from the Exeter Machine Works for the East Tennessee Iron & Coal Company.

The facts necessary to be stated are as follows: About August 6, 1900, the East Tennessee Iron & Coal Company ordered from the complainant a double cylinder, single-drum hoisting engine; the drum to be large enough to hold 3,200 feet of $\frac{7}{8}$-inch wire rope, and the engine of sufficient capacity and power to haul 15 empty coal cars, weighing 12,000 pounds, up a certain incline, and lower the same when loaded, and weighing 39,000 pounds, with brakes of sufficient strength and power to hold the cars when loaded, and let them safely down the incline, for use at its coal mines at Pioneer, Tenn.

The complainant contracted with the defendant Exeter Machine Works, manufacturers of this character of machinery, to supply the engine and attachments above described, to be delivered f. o. b. the cars at its factory at Pittston, Pa., and shipped direct to the East Tennessee Iron

& Coal Company, at Pioneer, not later than October 1, 1900. The Exeter Machine Works undertook to fill this order, and did ship the East Tennessee Iron & Coal Company about the time agreed upon, a hoisting engine and attachments mentioned, which were received and installed by it at its mines about November 15, 1900. In about two weeks thereafter it was discovered that the machinery was insufficient to do the work required, on account of defects in the drum, brake and some other matters, and did not conform to the specifications upon which it was ordered, and contracted to be furnished by the Exeter Machine Works. Instead of having capacity to let down the incline safely fifteen loaded cars, of the weight of 39,000 pounds, it would not safely lower more than nine loaded cars, weighing 24,000 pounds, and for this reason failed to answer the purpose for which it was purchased by the East Tennessee Iron & Coal Company, and comply with the specifications contained in the orders given for it.

The East Tennessee Iron & Coal Company, soon after the deficiencies were discovered, made complaint of them to complainant and the Exeter Machine Works. The complainant agreed with the East Tennessee Iron & Coal Company to make them good, and notified the Exeter Machine Works of the failure of the machinery to conform to the specifications given it, and demanded that it make the same good, which it refused to do. Afterwards, about April, 1901, the

East Tennessee Iron & Coal Company purchased from the Exeter Machine Works other machinery to remedy the deficiencies in that already delivered to it, so that it would do the work required, and contracted and agreed to pay it $252 for such additional machinery. The defendant, the Exeter Machine Works, knew at the time the order was placed with it that the machinery was for the East Tennessee Iron & Coal Company, and was instructed to ship it directly to it. The East Tennessee Iron & Coal Company paid the complainant for the machinery ordered, but yet owes to the Exeter Machine Works the $252 agreed to be paid it for the additional machinery purchased. The machinery ordered by the complainant has been used by the East Tennessee Iron & Coal Company since it was first installed at its mines, and, when this suit was brought, was considerably worn and depreciated in value. Neither it nor the complainant tendered back to the Exeter Machine Works the defective machinery, or took any steps to rescind the contract. The complainant has not paid the damages admitted by it to be due the East Tennessee Iron & Coal Company for breach of the warranty of the machinery, and brings this suit to recover from the Exeter Machine Works damages upon its implied warranty of the machinery purchased for the use and benefit of the East Tennessee Iron & Coal Company.

The court of chancery appeals sustained the

bill and granted the relief prayed, and the defendant, Exeter Machine Works, has appealed and assigned error.

There was an implied warranty on the part of the Exeter Machine Works that the engine and attachments ordered from it for the special use and purpose communicated to it at the time were reasonably suitable and fit for the purpose intended, and this rule applies whether the machinery was in stock, or specially manufactured to fill this particular order. *Overton* v. *Phelan,* 2 Head, 446; *Tennessee River Co.* v. *Leeds,* 13 Pick., 574 (37 S. W., 389) ; Benj. Sales (4th Ed.), sec. 656; 15 Am. & Eng. Enc. Law (2d Ed.), p. 1231.

The Exeter Machine Works, however, insists that the right of action against it for breach of this implied warranty has been waived and abandoned by the acceptance, use of the machinery, payment therefor and failure to return or offer to return the same. This contention is not sound. It is well settled that the purchaser of goods, with warranty as to the quality, express or implied, may recover for a breach of the warranty after payment, without notice to the seller of the defects, and a return or tender of the goods. It is said in 15 Am. & Eng. Enc. Law (2d Ed.), p. 1255: "In case there is a breach of implied warranty of quality, there are several remedies open to the buyer. He may retain the goods, and, when sued for the purchase price, set

up the breach in reduction of damages, or he may bring suit to recover the damages caused thereby. As a general rule, whether the buyer retains the goods and sues for a breach of warranty, or retains the goods and is sued for the price, it is not necessary for him, to entitle him to damages for the breach to return or offer to return the goods, or to notify the seller of the defects. The only result of a failure to return the goods, or to notify the vendor of their defective quality, is to raise the presumption that the complaint of the quality is not well founded."

Mr. Benjamin, in his work on Sales (sections 897, 899), says: "The second proposition, that the buyer may, after receiving and accepting the goods, bring his action for damages, in case the quality is inferior to that warranted by the vendor, needs no authority. It is taken for granted in all cases, there being nothing to create an exception to the general rule that an action for damages lies in every case for a breach of promise made by one man to another for a good and valuable consideration. Not only may the breach of warranty be so used in defense, but a direct action by the buyer may be maintained for the damages for the breach, without notice to the vendor."

Our own cases are equally clear that the benefit of the warranty may be had without a return or offer to return of the goods, and after payment. *Harkleroud* v. *Nave,* 2 Shan. Cas., 407; *Lewis* v. *Hubbard,* 1 Lea, 439, 440 (27 Am. Rep., 775); *Ford* v.

*Thompson,* 1 Head, 266; *Lawrence* v. *Vick,* 10 Humph. 285; *Overton* v. *Phelan,* 2 Head, 448.

It is only necessary to return or offer to return the goods where the purchaser elects to rescind the contract and resists payment, or, where payment has been made, recover the entire consideration, which is the measure of damages on rescission. If he pursues this course, he must, in such case, return or tender back the goods to the vendor at the place of delivery within a reasonable time, unless he is excused by the refusal of the vendor to accept them if tendered. The return or tender of the goods is necessary, because the purchaser can not be allowed to retain them and refuse payment of all the purchase price. Where he elects to treat the contract as closed and absolute, and sues for breach of warranty, the measure of damages is the difference between the value of the property contracted for and that delivered; and, therefore, he need not return or tender back the goods, but has the right to retain the same. 15 Am. & Eng. Enc. Law, pp. 1256, 1257; *Allen* v. *Anderson,* 3 Humph., 581, 583 (39 Am. Dec., 197).

Whatever doubt our earlier cases have thrown upon this question seems to have grown out of a confusion of the measure of damages in actions where the contract has been rescinded, and those where it is treated as subsisting, and damages sought for a breach.

The case of *Rosson* v. *Hancock,* 3 Sneed, 434, which

is supposed to be in conflict with the rule here announced, was not an action upon warranty, but for fraud in the sale of a slave; and the question determined was more as to the form of action and measure of damages, than the rights of the parties.

Judge Harris, in his dissenting opinion, throws light upon this case. He says: "The returning or not returning of the property affects the measure of damages. Where the property is returned the party has the right to recover the money he has paid, with interest; but, where it is not returned, then he can recover the difference between the value of the property, if free from defects complained of, and what it is worth, affected by such defects. In other words, in the latter case he can recover the amount the property is lessened in value by such defects. His not returning the property affects the measure of damages, but not the party's right of action." This case was criticised and confined to narrow limits in *Connor* v. *Crunk,* 2 Head, 247, and this court declined to follow it in the later cases of *McLean* v. *Houston,* 2 Heisk., 37, and *Harkleroud* v. *Nave,* supra.

It is urged upon behalf of the defendant that, whatever may be the rule in cases of express warranty is implied, and the goods are retained and paid for, an action for a breach of it can not be maintained; and the case of *Kentucky Saw Works* v. *Little River Land & Lumber Co.* (decided by the court of chancery appeals, and affirmed by this court), 42 S. W., 527, is relied upon to sustain this contention. We

have examined the case, and do not think that it sustains this position. It was a bill to recover the value of some saws sold the defendant, and the defense seems to have been a total failure of consideration, resulting from unsuitableness for the purpose intended, and defects in the saws; and while the opinion, upon the authority of some cases from other States gives expression to views which tend to support defendant's contention, the court finds and holds that the defendant had failed to prove that the saws were defective and unfit for the use for which they were purchased, when received, and were in fact used by the defendant. What was said was in view of the defense of total failure of consideration, and the further failure to show that the saws were defective or unfit for the use intended, upon which latter question of fact the case was decided. We are unable to see any reason for a different rule in cases of express and implied warranty. They are of equal dignity, and equally binding upon the parties, and the measure of damages is the same in both.

We are therefore of the opinion that no notice to the seller of the defects in the machinery, or return or tender back of it, was necessary, and that this action may be maintained, after payment, for a breach of the implied warranty of the quality and suitableness of the machinery supplied by the defendant; and the decree of the court of chancery appeals, allowing a recovery of the damages sustained, is affirmed, with costs.