Overton, J.
 

 delivered the following opinion of the Court: —
 

 Two points have been made in argument by the counsel for the plaintiff. 1. That a court of law has not jurisdiction of such a cause, the question belonging properly to a court of equity. 2. That the inferior court erred in the opinion contained in the bill of exceptions.
 

 1. As to the first point, the Court is of opinion that the question cannot properly be raised from the record before us. It appears that the defendant himself has set out the condition of the lost bond ; he spread it on the record. We are therefore to take it as true ; and, as to him, it is the same thing as if the bond were in Court upon oyer. Both penalty and condition is admitted by him in his pleading.
 

 2. On the second ground, on consulting authorities, there appears a variety of opinions and decisions. It is insisted by the plaintiff’s counsel, first, that from the authorities the Court was authorized to give judgment for more than the penalty; and for the support of this point were cited, 2 T. R. 388; Judge Buller’s opinion in 3 Bro. C. C. 496; and 1 Mass. 308. Secondly, that the Court will consider the bond as.an agreement, the terms of which are expressed in the condition, throwing out of view the penalty altogether.
 

 On a careful review of all the authorities, it appears that in England the point is settled that judgment cannot be rendered for more than the penalty. 6 T. R. 303; 1 East, 436; 1 Taunton, 219; 2 P. Wm. 288; 3 Bro. 66,. 489, 496; 8 T. R. 28 ; Camp. Rep. 78, 278. So far as the decisions of the different States have come to our hands the courts seem to have taken different directions. In Pennsylvania, New York, Massachusetts, and
 
 *206
 
 South Carolina, they seem to think that judgment may be rendered for the aggregate amount of debt and damages to a greater sum than the penalty of a bond. In Virginia and New Jersey a different opinion is entertained, for which see 2 Dal. 266; 1 Mass. 313; 1 Bay, 490 ; 3 N. Y. T. R. 48; 2 Wash. 145 ; Pennington’s Rep. 40. Painful as the conflict of judicial Opinions may be, this Court, feeling sensibly the anxiety so resulting from it, is constrained to state its view of the question. It is believed that the case in 2 T. R. 388 is derogatory to the principles of the common law. With á wish to obtain as perfect a view of the question as we are able, it may be first necessary to consider the nature and construction of such an instrument of writing. The construction contended for by the defendant is not admissible. It is esteemed to be a sound rule in the construction of all writings, that every part of it should have its efficacy or operation if by any reasonable interpretation it can. We therefore cannot admit the idea that what is called the penal part of this bond should be disregarded. Taking it altogether then what is its meaning ? Manifestly this: That the testator acknowledged himself to be indebted to the defendant in the sum of eight hundred and fifty dollars ; but at the same time it was agreed, as expressed in the condition, that if the testator would do a certain act, to wit, convey a piece of land, that then the obligation to pay the money was to be void; but if he did not convey the land then he was to pay the eight hundred and fifty dollars. This is the plain and simple meaning of an obligation of this kind.
 

 But it is said that upon the condition not being complied with then the penal part of the bond becomes a debt and may be sued for as such; and that by the common law interest by way of damages shall be allowed for the detention of such debt. This seems to be the ground on which the Supreme Court of Massachusetts bottomed its opinion. By recurrence to the principles of the common law the grounds for this reasoning will be found untenable. Interest for money as a legal consequence was unknown to the common law. It is purely a statutory provision, and is founded on the supposition of a loan or forbearance in demanding payment of money actually due, or in other words loaned. It would be an obvious perversion of the meaning of a penal bond to construe the penalty as a debt really due. It was inserted to secure the performance of the condition, and surely was intended by the parties to be at least equivalent to all damages that might be sustained by its non-performance. ■ The common law idea was that the obligor bound himself to pay this sum in case he did not comply with the condition. It is true the obligor frequently went into chancery to be relieved from the full payment of the specified penalty. This was remedied by the statute of ffm. 3, in England; ■but still the idea does not appear to have occurred in the English courts, that more could be recovered until the case refered to in 2 T. R. 388. In
 
 *207
 
 the courts of law there that case has long’ since been overruled; and it is remarkable that the Court of Chancery never would decree beyond the penalty, considering that sum as an agreed security for all the damages that might arise.
 

 In Williams’s note to 1 Saun. Rep. 58, the authorities
 
 pro
 
 and
 
 con
 
 are judiciously arranged; and from the opinion of the compiler it is clear that a greater sum than the penalty cannot be recovered unless it be in cases where, by the expréss agreement of the parties, the penal part of the obligation is to become a real debt, then that sum with interest may be recovered.
 

 Nor is it because that the common law will warrant the opinion that any other than merely nominal damages could be recovered in an action of debt. The idea has arisen from the statutes having allowed interest; but, as before remarked, those statutes do not countenance the impression that interest shall be allowed on penalties.
 

 The judgment must be reversed; and this Court proceeding to give such judgment as the Circuit Court should have done, directs that judgment shall be entered for eight hundred and fifty'dollars with the costs of the Circuit Court, and that the defendant pay the costs of this Court.